**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **SHARON HARMON,** | ) | **CASE NO.1:15CV00926** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **YWCA OF GREATER CLEVELAND,** | ) | **OPINION AND ORDER** |
| | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Defendant YWCA of Greater Cleveland's ("YWCA") Motion for Summary Judgment. (ECF # 18). For the following reasons, the Court grants, in part and denies, in part Defendant's Motion.

According to her Complaint, Plaintiff Sharon Harmon ("Harmon") was hired for the position of UPK Coordinator/Lead Teacher with YWCA on November 5, 2012. Harmon worked in an administrative capacity as support staff for the Administrator. Because she lacked any decision making authority, Harmon contends she was entitled to overtime pay at the rate of one and one-half times her weekly pay for any hours worked over forty hours in a given week. Harmon alleges YWCA misclassified her as "exempt" to avoid paying her the statutory rate of overtime pay as mandated by the Fair Labor Standards Act ("FLSA").

In June of 2014, the Administrator resigned, leaving the facility without anyone in charge with the appropriate State Licensure. YWCA approached Harmon about acting as the Interim Administrator because Harmon had the appropriate State Licensure for the

facility.  YWCA placed Harmon's name on the State of Ohio's records as its primary licenced agent for the YWCA facility, however, Harmon retained her administrative duties and was never given the duties of the Administrator nor was she given additional compensation.  In September 2014, YWCA hired a new Administrator but the newly hired Administrator lacked the appropriate State Licensure so YWCA kept Harmon's name on the State Licensure.  Plaintiff orally complained to her immediate supervisor that she thought YWCA was acting fraudulently by hiring an Administrator who lacked the appropriate licensure while keeping Harmon's name on the State Licensure as Administrator.  When her immediate supervisor failed to respond to Plaintiff's concerns, she inquired of others as to what she should do.  The following day, Harmon was issued a written reprimand for her activities, including: spreading malicious gossip, creating discord, interfering with another employee on the job, restricting work output and encouraging others to do the same.  Shortly thereafter, YWCA terminated Harmon's employment for allegedly falsifying information on a scholarship application.

      Plaintiff alleges claims for violations of the FLSA for unpaid overtime, Retaliatory Discharge in violation of the Ohio Whistleblower Statute and Wrongful Termination in Violation of Ohio Public Policy.

      YWCA moves for summary judgment on all Harmon's claims.  According to YWCA, Harmon was added to the State Licensure as Administrator because Harmon agreed and because Harmon had the requisite license.  However, merely being added to the State Licensure as Administrator does not, according to YWCA, mean Harmon was a director, administrator or that she was qualified as such.  After being added to the State

Licensure, Harmon continued in her administrative duties, although she took on additional responsibilities over the course of her employment.

In August of 2014, Harmon's title was changed to Compliance Coordinator. Sometime in November 2014, YWCA's Vice-President of Programs and Operations learned Harmon had provided false and/or inaccurate information on her scholarship application. Harmon represented on the scholarship application that she was the Assistant Director of the YWCA Early Learning Center ("ELC"). No such position existed at the YWCA.  Upon discovering this, YWCA terminated Harmon's employment.

## LAW AND ANALYSIS

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). The burden is on the moving party to conclusively show no genuine issue of material fact exists, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994); and the court must view the facts and all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347. This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hosp. Ass'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v.*

*Brookfield Township Trs.*, 980 F.2d 399, 404-06 (6th Cir. 1992). The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distribs. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

**FLSA violations**

Under the FLSA, an employee who works more than forty hours in a work week must receive overtime compensation at a rate of not less than one and one-half times the regular rate. 29 U.S.C. § 207(a)(1). Section 13(a) of the FLSA exempts certain positions from the overtime pay requirements, including executive, administrative, or professional positions. 29 U.S.C. § 213(a)(1). "Congress did not define these exemptions, but delegated authority to the Department of Labor (DOL) to issue regulations to define and delimit these terms." *Foster v. Nationwide Mut. Ins. Co.*, 710 F.3d 640, 642 (6th Cir. 2013). "The current regulations, reissued and streamlined with minor amendments in 2004, provide that the administrative exemption covers employees: (1) Compensated ... at a rate of not less than $455 per week ...; (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) Whose

primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a).

"The exemption is to be narrowly construed against the employer, and the employer bears the burden of proving each element by a preponderance of the evidence." *Foster* at 642 citing *Renfro v. Indiana Mich. Power Co. (Renfro II),* 497 F.3d 573, 575–7 (6th Cir.2007).

The administrative exemption is further defined in 29 CFR § 541.201, which reads:

> (a) To qualify for the administrative exemption, an employee's primary duty must be the performance of work directly related to the management or general business operations of the employer or the employer's customers. The phrase "directly related to the management or general business operations" refers to the type of work performed by the employee. To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment.
>
> (b) Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities. Some of these activities may be performed by employees who also would qualify for another exemption.
>
> (c) An employee may qualify for the administrative exemption if the employee's primary duty is the performance of work directly related to the management or general business operations of the employer's customers. Thus, for example, employees acting as advisers or consultants to their employer's clients or customers (as tax experts or financial consultants, for example) may be exempt.

29 CFR § 541.202 lists a number of factors for the Court to consider when determining whether an employee is an exempt employee under the administrative exemption to the FLSA overtime pay requirement.

> (a) To qualify for the administrative exemption, an employee's primary duty must include the exercise of discretion and independent judgment with respect to matters of significance. In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered. The term "matters of significance" refers to the level of importance or consequence of the work performed.
>
> (b) The phrase "discretion and independent judgment" must be applied in the light of all the facts involved in the particular employment situation in which the question arises. Factors to consider when determining whether an employee exercises discretion and independent judgment with respect to matters of significance include, but are not limited to: whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.
>
> (c) The exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision. However, employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level. Thus, the term "discretion and independent judgment" does not require that the decisions made by an employee have a finality that goes with unlimited authority

6

and a complete absence of review. The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action. The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment. For example, the policies formulated by the credit manager of a large corporation may be subject to review by higher company officials who may approve or disapprove these policies. The management consultant who has made a study of the operations of a business and who has drawn a proposed change in organization may have the plan reviewed or revised by superiors before it is submitted to the client.

(d) An employer's volume of business may make it necessary to employ a number of employees to perform the same or similar work. The fact that many employees perform identical work or work of the same relative importance does not mean that the work of each such employee does not involve the exercise of discretion and independent judgment with respect to matters of significance.

(e) The exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources. See also § 541.704 regarding use of manuals. The exercise of discretion and independent judgment also does not include clerical or secretarial work, recording or tabulating data, or performing other mechanical, repetitive, recurrent or routine work. An employee who simply tabulates data is not exempt, even if labeled as a "statistician."

(f) An employee does not exercise discretion and independent judgment with respect to matters of significance merely because the employer will experience financial losses if the employee fails to perform the job properly. For example, a messenger who is entrusted with carrying large sums of money does not exercise discretion and independent judgment with respect to matters of significance even though serious consequences may flow from the employee's neglect. Similarly, an employee who operates very expensive equipment does not exercise discretion and independent judgment with respect to matters of significance merely because improper performance of the employee's duties may cause serious financial loss to the employer.

FLSA exemptions are "affirmative defense[s] on which the employer has the burden of proof." *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974). While the Sixth Circuit has observed that an employer "must establish through 'clear and affirmative evidence' that the employee meets every requirement of an exemption,'" *Ale v. TVA*, 269 F.3d 680, 691 (6th Cir. 2001), the burden of proof on an employer is not heightened; rather, an employer has the burden of establishing the elements by a preponderance of the evidence. *Renfro,* 497 F.3d at 576.

According to YWCA, the undisputed facts demonstrate Harmon's job duties fall clearly within the administrative exemption. Harmon was the Universal Pre-Kindergarten ("UPK") Coordinator/Lead Teacher and Compliance Coordinator. She earned a salary of $34,000 per year/$654.85 per week. She understood this salary was meant to compensate for all her working hours at YWCA. Harmon on deposition admits she was responsible for auditing staff and client files at the YWCA's ELC to ensure compliance with governmental regulations (Harmon depo pg. 82-83). She admits she maintained staff and client files for the ELC and performed data collection. (*Id* at 110, 153), government relations and accounting and financial responsibilities. (*Id* at 78, 79 and 112-13). Thus, according to YWCA, based on her own descriptions of her job duties, Harmon met most of the functional requirements of the administrative exemption under 29 CFR § 541.201(b).

YWCA contends Harmon's job duties further required the exercise of discretion and independent judgment regarding matters of significance per her own testimony. (*Id.* at 97-98). She was responsible for knowing all applicable local, state and federal

regulations for the ELC and conveying that information to other YWCA employees to ensure compliance. (Id. at 78).

Plaintiff prepared and sent letters to parents informing them of the specific governmental requirements for UPK compliance; coordinated directly with government officials regarding the social/emotional screening of children at the ELC; ensured children and staff files were updated regarding training; prepared reports and spreadsheets to ensure staff attended required training and conducted training of staff. (Id. at 82-83). Therefore, given the totality of her administrative job duties, YWCA argues Harmon was properly classified as exempt.

YWCA also believes Harmon's job duties fall under the Educational Administrative Exemption. Pursuant to 29 CFR § 541.204, employees are exempt from the FLSA's overtime pay requirements if their "primary duty is performing administrative functions directly related to academic instruction or training in an educational establishment or department or subdivision thereof." "The term 'educational establishment' means an elementary or secondary school system, an institution of higher education or other educational institution." (*Id*.)

YWCA points to Harmon's deposition testimony wherein she described her UPK Coordinator and Compliance Coordinator duties as "primarily administrative support for the teachers." (*Id* at 80-83, 89, 99, 105). YWCA argues its ELC is an educational system because its curriculum is regulated and approved by the State of Ohio. Educational administrative functions under the CFR include responsibility for the curriculum, quality and method of instruction, measuring and testing potential and

9

achievement of students and other aspects of teaching.  According to YWCA, Harmon's job duties fall within the educational administrator exemption as well.

YWCA also disputes Harmon's representation that YWCA failed to keep accurate records of her hours worked and wages earned.  YWCA asserts that Harmon was required to log in and out of a computer when she arrived at work and when she left so that YWCA could track her hours.  YWCA's Vice-President of Programs and Operations, Teresa Sanders, testified that Exhibit 8 to Harmon's deposition was an accurate record of Harmon's work hours and further testified that YWCA kept complete and accurate hours of all employees regardless of their exempt or non-exempt status.

Harmon raises a threshold argument that YWCA never affirmatively plead the administrative exemption in its Answer and therefore, has waived such a defense. According to Harmon, the Sixth Circuit requires pleading FLSA exemptions with specificity and in the absence of such specificity a Defendant waives the right to assert the defense.

Even if they have not waived the exemption defense, Harmon argues YWCA cannot establish by a preponderance of the evidence she is an exempt employee because Harmon disputes the YWCA's descriptions of her job duties, claiming the administrative exemption does not apply to the work she performed because the majority of the work was not administrative.

**Failure to Plead Exemption**

The Supreme Court has held "FLSA overtime exemptions are 'affirmative defense[s] on which the employer has the burden of proof.'"  *Corning Glass Works v.*

*Brennan,* 417 U.S. 188, 196–97,(1974). "Defendants must generally claim an exemption in their first responsive pleading or we will consider the defense forfeited." *Hopkins v. Chartrand,* 566 F. App'x 445, 448 (6th Cir. 2014) "The purpose of Rule 8(c)'s pleading requirement is to give the opposing party notice of the defense and a chance to rebut it." *Id.*

Having reviewed the pleadings, motions and briefs, the Court finds YWCA has not waived the administrative exemption defense. Although it did not plead a specific FLSA exemption in its Answer, YWCA did assert generally the affirmative defense of exemption under the FLSA as Affirmative Defense #6 in its Answer. Furthermore, Plaintiff's Complaint alleges Harmon was hired in an administrative capacity and she was hired to be administrative staff. (Complaint 9, 17). In its Answer, YWCA asserted Harmon was properly classified as exempt under the FLSA. (Answer 9, 13, 17-20). Harmon never moved to strike or dismiss the affirmative defense as insufficient. Furthermore, in discovery, YWCA repeatedly asked Harmon in deposition about her exempt status and about all the relevant aspects of her job duties in relation to the administrative exemption. YWCA specifically asserted the administrative exemption in its Supplemental Discovery Response weeks prior to Harmon's deposition of YWCA's representatives. Harmon never requested additional time to conduct discovery. Harmon had the opportunity long before summary judgment briefing was due to explore the substance and bases for the exemption and did not. Harmon cannot now complain that the defense is waived and the Court finds no waiver has occurred. As YWCA correctly points out the Sixth Circuit in *Hopkins* held, "[T]he failure to raise an affirmative

defense by responsive pleading does not always result in a forfeiture of the defense – such as when the plaintiff receives notice of the affirmative defense by some other means." *Hopkins,* 566 Fed. Appx. at 449. Therefore, the Court will analyze the defense.

In order to satisfy the requirements of the administrative exemption, YWCA must prove by a preponderance of the evidence that Harmon was compensated at a rate not less than $455 a week. Harmon does not dispute that her salary of $34,000 a year exceeds $455 a week.

YWCA must next establish that Harmon's "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers..." "While the question of how employees spend their working time is a question of fact, [t]he question whether their particular activities excluded them from the overtime benefits of the FLSA is a question of law ... governed by the pertinent regulations promulgated by the Wage and Hour Administrator." *Renfro v. Indiana Michigan Power Co.,* 233 F. Supp. 2d 1174, 1180 (W.D. Mich. 2002), aff'd, 370 F.3d 512 (6th Cir. 2004).

Under the relevant CFR's, courts are given substantial guidance on analyzing the exemptions. To qualify for the administrative exemption, an employee's primary duty must be performance or work directly related to the management or general business operations of the employer or the employer's customers. This includes tax, finance, accounting, budgeting, auditing, insurance, purchasing, procuring, marketing, research, personnel management, legal and regulatory compliance. The position also requires the exercise of discretion and independent judgment with respect to matters of significance.

YWCA relies almost entirely on the deposition testimony of Harmon regarding her job duties.  When asked the basic functions of her position as UPK coordinator/lead teacher, Harmon responded as follows:

Q.  Is it fair to say that the basic function of the UPK coordinator/lead teacher was government reporting and compliance?

A.  Yes.

(Harmon depo. Pg 78.)

Harmon testified that up until June 2013, the following list of job duties and responsibilities accurately reflects her duties at the YWCA:

governmental program data entry requirements; assisting with implementation of curriculum; monitor billing, insure accurate record-keeping and attendance; coordinate and schedule state required staff training; auditing and maintaining ELC participant and staff files; monitoring and maintaining County swipe card system; attend all ELC external and internal meetings; develop and monitor UPK family engagement activities; coordinate student assessment activities; maintain SUTQ star rating and serve as lead teacher during staff absences.  (*Id* at 75).

Following June 2013, Harmon testified she was given additional compliance duties.

Harmon further testified that programs such as Step Up to Quality, Child and Adult Food Program, Invest in Children/Universal Pre Kindergarten and Ohio Department of Job and Family Services daycare licensing were all governmental programs she facilitated and ensured compliance with as part of her duties.  (*Id*. at 77-78, 82-82, 87, 94, 178-179).  Harmon testified her job included "Keeping compliance of the child–the child's files, staff files, making sure the staff were attending and receiving the trainings they needed, scheduling the trainings they needed, sending letters to parents in

regards to children's medicals that were about to expire or children's enrollment records that needed to be updated." (*Id* at 73). Harmon further attested she helped with enrollments, helped with tours, helped new hire and made sure the YWCA's Procare computer system was working for children so parents could enter. (*Id* at 74). Harmon was asked if most, if not all, of these duties involved the clients of YWCA or the children. Harmon answered yes, adding that it also involved the YWCA staff. (*Id*).

Harmon gave some particulars on her actual day to day job duties. For instance, concerning billing, she testified she only accounted for attendance in the UPK classrooms and passed the information to YWCA's finance department for billing. (*Id* at 78). She admits to supporting implementing curriculum, which included social/emotional development with an academic component but only when acting as a lead teacher. She denies developing the curriculum. ( *Id* at 80-81). She admits monitoring attendance, coordinating and scheduling staff training and describes ensuring ELC participant files contained all the proper documents relating to health screenings. (*Id* at 82). Harmon would send letters to parents or set up dates for screenings of the children. (*Id* at 83). She helped set up family activities and set up screenings for student assessments. (*Id* at 84-85). Harmon denied having to exercise independent judgment or discretion because she had to confer on most decisions with her supervisor. (*Id.* at 90). She described her ELC duties as primarily administrative support for the teachers. (*Id* at 89).

Harmon's affidavit contends she was required to be in the classroom as a Lead Teacher four days a week for 8-10 hours a week. This was done after logging off her computer because she was required to be in another area of the YWCA away from her

14

regular work desk. Lead Teacher is not an exempt position.

YWCA contends Harmon's affidavit contradicts her deposition testimony wherein she never describes any substantial time spent as Lead Teacher.

Having reviewed all the testimony and evidence, the Court finds genuine issues of fact militate against summary judgment. Unquestionably, Harmon attested she performed many tasks that are exempt under the FLSA. However, there are genuine issues of fact concerning what level of discretion and independent judgment she exercised at her job. She attests everything had to be approved by her supervisor. She also attests many of her functions involved simple mundane functions like tabulating attendance. Lastly, she attests to engaging in nonexempt job duties for substantial periods of time. Under the FLSA, a plaintiff's primary duties do not necessarily have to comprise more than fifty percent of her time.

> The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee. Thus, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement. Time alone, however, is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work. Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion.

29 C.F.R. § 541.700.

Here, the Court is required to narrowly construe exemptions against employers and the burden of proof is placed on the employer to show each element. Because there are genuine issues of fact regarding Harmon's primary job duties and what, if any, amount of independent judgment and discretion she could exercise, the Court denies

YWCA's Motion for Summary Judgment on this issue.

For the same reasons, the Court denies YWCA's argument that Harmon is exempt under the educational administrative exemption.

**Ohio Whistleblower Statute**

In her Complaint, Harmon alleges she was terminated in violation of O.R.C. § 4113.52, Ohio's Whistleblower Statute, for raising concerns with YWCA that it should not be operating under a license in her name when she was not the Administrator. Shortly after complaining of the licensing discrepancy, Plaintiff alleges she received a reprimand and was terminated. According to Plaintiff, this termination was for "blowing the whistle" on YWCA's improper licensing.

Ohio's Whistleblower Statue is codified in O.R.C. § 4113.52 (A)(1)(a), which reads in pertinent part:

> If an employee becomes aware in the course of the employee's employment of a violation of any state or federal statute or any ordinance or regulation of a political subdivision that the employee's employer has authority to correct, and the employee reasonably believes that the violation is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety, a felony, or an improper solicitation for a contribution, the employee orally shall notify the employee's supervisor or other responsible officer of the employee's employer of the violation and subsequently shall file with that supervisor or officer a written report that provides sufficient detail to identify and describe the violation. If the employer does not correct the violation or make a reasonable and good faith effort to correct the violation within twenty-four hours after the oral notification or the receipt of the report, whichever is earlier, the employee may file a written report that provides sufficient detail to identify and describe the violation with the prosecuting authority of the county or municipal corporation where the violation occurred, with a peace officer, with the inspector general if the violation is within the inspector general's jurisdiction, or with any other appropriate public official or agency that has regulatory authority over the employer and the industry, trade, or business in which the employer is

engaged.

If an employee informs his or her supervisor of the suspected wrongful conduct, O.R.C. § 4113.52 (B) prohibits retaliation.

> (B) Except as otherwise provided in division (C) of this section, no employer shall take any disciplinary or retaliatory action against an employee for making any report authorized by division (A)(1) or (2) of this section, or as a result of the employee's having made any inquiry or taken any other action to ensure the accuracy of any information reported under either such division. No employer shall take any disciplinary or retaliatory action against an employee for making any report authorized by division (A)(3) of this section if the employee made a reasonable and good faith effort to determine the accuracy of any information so reported, or as a result of the employee's having made any inquiry or taken any other action to ensure the accuracy of any information reported under that division

According to her Complaint, Harmon orally informed her supervisor that the facility should not be operating under license in her name when she was not the Administrator and was subsequently terminated.

YWCA moves for summary judgment on Harmon's Whistleblower claim because she did not strictly comply with the statutory requirement that she inform her employer orally and in writing. Because Harmon admits she did not submit her concern in writing, YWCA contends the law requires judgment for YWCA. Harmon contends that it was an impossibility to submit her concerns in writing because when she complained orally about the conduct to her supervisor, Teresa Sanders, Sanders provided her a written reprimand for going door-to-door complaining to staff about the licensing issue. Harmon was terminated two days afterwards claiming it was impossible for her to have submitted a written complaint to her supervisor.

17

The Court finds YWCA is entitled to summary judgment on Harmon's Retaliation claim under the Whistleblower statute because she failed to strictly comply with the requirement that she submit a detailed complaint to her employer in writing. Harmon's argument that she did not have time to comply because she was terminated shortly after complaining is unavailing because she admits she first complained of the conduct in August of 2014, nearly three months before her termination. In her affidavit, Harmon attests:

> The YWCA hired Alicia Arends on August 4th, 2014 into the position of Administrator. I spoke with Teresa Sanders several times in August about changing this and putting her name on the license. Ms. Sanders never responded despite my repeated assertions this was wrong. In late August I continued to push Ms. Sanders about this necessary change as well as such other violations of State Code that I was witnessing.
> (Harmon aff. 39-42)

Thus, Harmon acknowledges she complained orally to her supervisor repeatedly in August of 2014 of the licensing issues, along with other alleged misconduct, but attests she never submitted anything in writing. As stated by both the Sixth Circuit and the Ohio Supreme Court, to avail themselves of its protections employees must strictly comply with the requirements of Ohio's Whistleblower statute. "The Ohio Supreme Court requires claimants invoking the protections of this Act to strictly comply with its dictates." *Gilreath v. Clemens & Co.,* 212 F. App'x 451, 464 (6th Cir. 2007) citing *Contreras v. Ferro Corp.,* 73 Ohio St.3d 244, 652 N.E.2d 940, 943–44 (1995). In *Contreras*, the Ohio Supreme Court held against an employee alleging a violation of the Ohio Whistleblower statute. In considering the express language of the statute, the Ohio Supreme Court held, "therefore, to restate, R.C. 4113.52(A)(1) protects an employee for

reporting certain information to outside authorities *only* if the following requirements have first been satisfied: (1) the employee provided the required oral notification to the employee's supervisor or other responsible officer of the employer, (2) the employee filed a written report with the supervisor or other responsible officer, and (3) the employer failed to correct the violation or to make a reasonable and good faith effort to correct the violation." *Id* at 73 248. Finding Contreras failed to orally complain and failed to provide a written complaint to his employer, the Court held "An employee who fails to follow the specific requirements of the statute is not a protected whistleblower and, accordingly, may not bring a wrongful discharge action..." *Id* at 249.

Because Harmon had ample time and opportunity to submit a written complaint to her employer and failed to do so, her claim under Ohio's Whistleblower statute fails as a matter of law.

**Public Policy Claim**

Harmon asserts a claim for Wrongful Termination in violation of Ohio Public Policy. In her Complaint at pg. 8, she alleges, "It is well established that Plaintiff may bring a public policy claim for wrongful discharge associated with violations of 4113.52." While true, such a claim may not be maintained if Plaintiff cannot demonstrate a violation of the underlying source of the policy. "The Sixth Circuit and the Ohio Supreme Court have both held that under Ohio law, a plaintiff cannot state a claim for wrongful discharge in violation of public policy unless he or she is able to establish a violation of the underlying source of that policy." *Shingler v. Smile Care, LLC,* No. 1:14 CV 725, 2015 WL 3935943, at *4 (N.D. Ohio June 26, 2015), see also

*Kulch v. Structural Fibers, Inc.* (1997), 78 Ohio St.3d 134, 677 N.E.2d 308.

Because the Court has already determined Harmon cannot maintain a cause of action for violation of the Ohio Whistleblower statute, her public policy claim based on the same fails as a matter of law as well.

Therefore, for the foregoing reasons, the Court denies YWCA's Motion for Summary Judgment on Harmon's FLSA claim and grants YWCA's Motion for Summary Judgment on Harmon's Retaliation and Public Policy claims.

IT IS SO ORDERED.

s/ Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge

Dated:  March 9, 2017